# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 15-60477

LUVATA GRENADA, L.L.C.*,*

*Plaintiff-Appellant Cross-Appellee,*

– v. –

DANFOSS INDUSTRIES S.A. DE C.V.,

*Defendant-Appellee Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI, GREENVILLE

## BRIEF FOR PLAINTIFF-APPELLANT CROSS-APPELLEE

| | |
|---|---|
| WISE, CARTER, CHILD & CARAWAY, P.A. | HODGSON RUSS LLP |
| 401 East Capitol Street | The Guaranty Building |
| Heritage Building, Suite 600 | 140 Pearl Street, Suite 100 |
| Jackson, Mississippi 39201 | Buffalo, New York 14202 |
| (601) 968-5500 | (716) 856-4000 |

*Attorneys for Plaintiff-Appellant Cross-Appellee*

Case No. 15-60477

* * *

LUVATA GRENADA, L.L.C.,
*Plaintiff-Appellant Cross-Appellee,*

– v. –

DANFOSS INDUSTRIES S.A. DE C.V.,
*Defendant-Appellee Cross-Appellant.*

* * *

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Luvata Grenada, LLC (Plaintiff-Appellant-Cross-Appellee)

2. Luvata Heat Transfer Solutions, Inc. (member of Luvata Grenada, LLC)

3. Luvata Heat Transfer Solutions II AB (part owner of Luvata Heat Transfer Solutions, Inc.)

4. Luvata Italy S.r.l. (part owner of Luvata Heat Transfer Solutions, Inc.)

5. Luvata Heat Transfer Solutions II AB (owner of Luvata Italy S.r.l.)

6. Luvata Heat Transfer Solutions I AB (owner of Luvata Heat Transfer Solutions II AB)

7.     Luvata Oy (owner of Luvata Heat Transfer Solutions I AB)

8.     Luvata S.á.r.l. (owner of Luvata Oy)

9.     Cidron Eight Limited (owner of Luvata S.á.r.l.)

10.    Nordic Capital V Limited (part owner of Cidron Eight Limited)

11.    Nordic Capital VI Limited (part owner of Cidron Eight Limited)

12.    Danfoss Industries S.A. De C.V. (Defendant-Appellee-Cross-Appellant)

13.    Danfoss, LLC (Defendant)

14.    Danfoss Holdings, Inc. (member of Danfoss, LLC)

15.    Danfoss A/S (Parent company to Danfoss Industries S.A. De C.V. Danfoss Holdings, Inc., and Danfoss, LLC)

16.    Ryan K. Cummings, Hodgson Russ LLP (counsel for Plaintiff-Appellant-Cross-Appellee)

17.    James L. Robertson, Wise Carter, Child & Caraway, P.A. (counsel for Plaintiff-Appellant-Cross-Appellee)

18.    James Cal Mayo, Jr., Mayo Mallette PLLC, (counsel for Defendant-Appellee-Cross-Appellant)

19.    Hon. Sharion Aycock, United States District Judge, Northern District of Mississippi

/S/ Ryan K. Cummings
Attorney for Appellant

II

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant-Cross-Appellee Luvata Grenada, LLC believes that the issues presented on this appeal have been appropriately briefed and oral argument would not materially aid in the decisional process. However, should the Court believe oral argument would be beneficial, Luvata Grenada, LLC stands ready to provide oral argument at the Court's request.

# **TABLE OF CONTENTS**

PAGE

CERTIFICATE OF INTERESTED PERSONS ...................................................... I

STATEMENT REGARDING ORAL ARGUMENT .............................................III

TABLE OF CONTENTS.....................................................................................III

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................................2

STATEMENT OF THE CASE................................................................................3

SUMMARY OF ARGUMENT .............................................................................11

ARGUMENT .......................................................................................................12

POINT I.     STANDARD OF REVIEW ..................................................................12

        A.     This Court's Standard of Review................................................12

        B.     The 12(b)(1) Standard.................................................................13

        C.     The 12(b)(2) Standard.................................................................14

POINT II.    THE CONTRACT WAS BETWEEN LUVATA
               GRENADA AND DANFOSS INDUSTRIES ...................................15

POINT III.   THE COURT HAS PERSONAL JURISDICTION
               OVER DANFOSS INDUSTRIES .......................................................17

        A.     Danfoss Industries is Doing Business in Mississippi
              Directly and through Its Authorized Agent Danfoss, LLC.......22

        B.     Danfoss Industries Entered Into a Contract with
              Luvata that was to be Performed in Part in Mississippi ...........24

        C.     Danfoss Industries Committed a Tort
              Which Had Its Effect in Part in Mississippi .............................25

## TABLE OF CONTENTS - cont'd

PAGE

D.   Exercising Personal Jurisdiction Over Danfoss
     Industries Comports with the Due Process Clause ................... 26

CONCLUSION ........................................................................................ 30

CERTIFICATE OF SERVICE ............................................................... 32

CERTIFICATE OF COMPLIANCE ....................................................... 33

## TABLE OF AUTHORITIES

PAGE

### FEDERAL CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .........................................................................4, 17

*Ainsworth v. Moffett Eng'g, Ltd.*,716 F.3d 174 (5th Cir. 2013) .............................26

*Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997) ....................................12

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000).........................17

*BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador
(PetroEcuador)*, 332 F.3d 333 (5th Cir. 2003)....................................................13

*Brown v. Flowers Indus., Inc.*, 688 F.2d 328 (5th Cir. 1982)..................................25

*Bullion v. Gillespie*, 895 F.2d 213 (5th Cir. 2005) .................................................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...............................26, 27, 28

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................................28

*Charles v. Al-Anssi*,
2007 U.S. Dist. LEXIS 19434 (S.D. Miss. Mar. 19, 2007).........................23, 24

*Cowart v. Shelby County Health Care Corp.*,
911 F. Supp. 248 (S.D. Miss. 1996) ..................................................................21

*Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).......................17

*DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir. 1983)...............................15

*Forest Oil Corp. v. Tenneco, Inc.*, 626 F. Supp. 917 (S.D. Miss. 1986)................19

*Internet Doorway, Inc. v. Parks*,
138 F. Supp. 2d 773 (S.D. Miss. 2001) .............................................................23

*Irvin v. Southern Snow Mfg.*, 517 Fed. Appx. 229 (5th Cir. 2013) ..................15, 26

*ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493 (5th Cir. 2012).............................15

## TABLE OF AUTHORITIES - cont'd

PAGE

*JR Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000) ...........17, 18, 19, 20

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)..........................................28

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006) ........................26

*McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) ..........................28

*Nolan v. The Boeing Co.*, 736 F. Supp. 120 (E.D.La. 1990) ...................................21

*Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (5th Cir. 2006)................14

*Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974)....................26

*Quick Technologies, Inc. v. Sage Group, PLC*,
   313 F.3d 338 (5th Cir. 2002) ...............................................................................14

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*,
   9 F.3d 415 (5th Cir. 1993) ...................................................................................14

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)...................25

*Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985)....................25

*United States v. Renda Marine, Inc.*, 667 F.3d 651 (5th Cir. 2012).......................12

*Walker v. World Ins. Co.*, 289 F. Supp. 2d 786 (S.D. Miss. 2003) ........................22

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ...............................................................................21

### STATE CASES

*Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613 (Miss. 1969)...................19

*Estate of Jones v. Phillips*, 992 So. 2d 1131 (Miss. 2008) .....................................22

*Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873 (Miss. 1995) .......................23, 25

*Smith v. Temco, Inc.*, 252 So. 2d 212 (Miss. 1971)................................................25

# TABLE OF AUTHORITIES - cont'd

PAGE

**FEDERAL STATUTES**

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..............................................................................1, 10, 13, 15

28 U.S.C. § 1367 ..................................................................................1, 10, 11

**STATE STATUTES**

Miss. Code Ann. § 13-3-57 ..................................................................18, 24

**CONSTITUTIONAL PROVISIONS**

United States Constitution .............................................................12, 20, 26

**OTHER AUTHORITIES**

United Nations Convention on Contracts
    for the International Sale of Goods..........................................1, 15, 16

# JURISDICTIONAL STATEMENT

On May 28, 2014, Plaintiff-Appellant-Cross-Appellee Luvata Grenada, LLC ("Luvata") commenced this action against Danfoss, LLC and Danfoss Industries S.A. de C.V. alleging claims for breach contract and breach of the implied warranties of merchantability and fitness for a particular purpose under the United Nations Convention on Contracts for the International Sale of Goods ("C.I.S.G."), so the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Luvata also alleged claims for breach of contract and breach of the implied warranties of merchantability and fitness for a particular purpose, as well as negligent misrepresentation and negligent design, under Mississippi law. The District Court had supplemental jurisdiction over Luvata's state law claims pursuant to 28 U.S.C. §1367.

On September 9, 2014, Defendant-Appellee-Cross-Appellant Danfoss Industries S.A. de C.V. ("Danfoss Industries") filed a 12(b) motion to dismiss Luvata's complaint for lack of subject matter and personal jurisdiction. The motion was also made on behalf of Defendant Danfoss, LLC. On June 2, 2015, the United States District Court for the Northern District of Mississippi granted Danfoss Industries' motion to dismiss based on a lack of personal jurisdiction. The District Court denied the motion to dismiss with regard to Danfoss, LLC.

Subsequently, the parties stipulated to dismiss the claims against Danfoss, LLC without prejudice.

Luvata timely filed a Notice of Appeal on July 2, 2015. Danfoss Industries timely filed a Notice of Cross-Appeal on July 9, 2015. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in granting Danfoss Industries' motion to dismiss the complaint for lack of jurisdiction when both the United States and Mexico are signatories to the C.I.S.G. and Luvata presented evidence that it is a Delaware limited liability company with its principal place of business in Grenada, Mississippi and it entered into a contract with Danfoss Industries, a Mexican corporation with its principal place of business in Mexico, for the sale of goods as defined by the C.I.S.G. In addition, Luvata presented evidence that Danfoss Industries, both through its own actions and those of its authorized United States sales agent, Danfoss, LLC, was doing business in Mississippi, entered into a contract with Luvata that required partial performance in Mississippi, and committed a tort outside Mississippi that had its effects in the state, so the District Court could erred when it held that it could not exercise personal jurisdiction over Danfoss Industries.

2

## STATEMENT OF THE CASE

### Factual Background

#### *Luvata Grenada LLC*

Luvata is a limited liability company with its principal, and only, place of business in Grenada, Mississippi. (ROA.15-60477.277).  Luvata manufactures heat transfer products, including coils used in commercial heating and cooling applications such as air conditioners and refrigeration units. (ROA.15-60477.6). Luvata regularly purchases products from, or through, Danfoss, LLC for use in Luvata's manufacturing facilities throughout the United States and Mexico. (ROA.15-60477.6);  (ROA.15-60477.88).    A  significant  number  of  Danfoss products are delivered to Luvata's manufacturing facilities in Grenada, Mississippi for incorporation into units that Luvata then sells to its customers, including products manufactured by Danfoss Industries (ROA.15-60477.6); (ROA.15-60477.88).  Luvata's purchases from Danfoss, LLC typically exceed $500,000 per-year. (ROA.15-60477.6).

#### *The Danfoss Group*

Danfoss A/S is a Danish corporation with its principal place of business in Nordborg, Denmark; it is the ultimate holding company for several hundred manufacturing and sales companies throughout the world, all of which are direct or

indirect subsidiaries of Danfoss A/S. (ROA.15-60477.7); (ROA.15-60477.302-307); (ROA.15-60477.320-340). This complex of companies is known as the Danfoss Group. (ROA.15-60477.7); (ROA.15-60477.320-340). Danfoss A/S has its products manufactured by separate, subsidiary, Danfoss Group companies that are generally located within a single country, and most of the companies manufacture a single product line. (ROA.15-60477.7); (ROA.15-60477.302-307).

The Danfoss Group manufactures, among many other things, distributor valves used in commercial heating and cooling applications. (ROA.15-60477.7). Danfoss A/S then uses separate, subsidiary, Danfoss sales companies to sell its products throughout the world. (ROA.15-60477.7); (ROA.15-60477.302-307). The usual practice within the Danfoss Group is for sales within a particular country to be the province of a single domestic sales company. (ROA.15-60477.8); (ROA.15-60477.302-307).

### *Danfoss, LLC*

Danfoss, LLC is the authorized sales agent for the other Danfoss Group companies, including Danfoss Industries, in the United States and specifically in the State of Mississippi. (ROA.15-60477.8); (ROA.15-60477.302-307). Danfoss, LLC is a Delaware limited liability company with its principal place of business in Baltimore, Maryland. (ROA.15-60477.8); (ROA.15-60477.293-300); (ROA.15-

4

60477.88).  At the time of this action, Danfoss, LLC's sole member was Danfoss Holding, Inc., a Delaware corporation with its principal place of business in Baltimore, Maryland. (ROA.15-60477.8). The stock of Danfoss Holding, Inc. was owned by Danfoss A/S. (ROA.15-60477.8).

Danfoss, LLC is registered to do business in the State of Mississippi, and has appointed CT Corporation System in Flowood, Mississippi, as its agent for service of process in Mississippi. (ROA.15-60477.8); (ROA.15-60477.293-300); (ROA.15-60477.88).  As the United States sales agent for the Danfoss Group, Danfoss, LLC solicits customers in the United States, including in the State of Mississippi, to purchase products from other Danfoss Group companies. (ROA.15-60477.9);  (ROA.15-60477.302-307).   Those Danfoss products are then manufactured and delivered in the United States, including the State of Mississippi, or for the use and benefit of those United States and Mississippi customers, by the Danfoss Group manufacturing companies. (ROA.15-60477.9); (ROA.15-60477.302-307); (ROA.15-60477.88).  Danfoss, LLC regularly solicits business from, and provides Danfoss Group products to, Luvata in Mississippi. (ROA.15-60477.9); (ROA.15-60477.88).

### *Danfoss Industries S.A. de C.V.*

Danfoss Industries is a Mexican corporation with its principal place of business in Apodaca, Mexico. (ROA.15-60477.9); (ROA.15-60477.96). Danfoss Industries is part of the Danfoss Group. (ROA.15-60477.9); (ROA.15-60477.320-340). Danfoss Industries manufactures, among other things, distributor valves used in commercial heating and cooling units. (ROA.15-60477.9). Danfoss Industries manufactures products that are intended to be, and are, delivered to Danfoss, LLC's customers in the United States, and specifically in Mississippi. (ROA.15-60477.9); (ROA.15-60477.88). Danfoss Industries also manufactures products for Danfoss, LLC's U.S. customers and delivers them to the customer's foreign manufacturing facilities. (ROA.15-60477.122-197).

### *The Transactions at Issue*

Danfoss, LLC, acting on behalf of and for the benefit of Danfoss Industries, negotiated and entered into Purchase Orders with Luvata for the distributor values that are the subject of this lawsuit. (ROA.15-60477.10); (ROA.15-60477.268-269). Specifically, on August 22, 2012, Robert Martin issued a request for quote to Bruce Busby at Danfoss, LLC for the distributor valves at issue. (ROA.15-60477.268). On August 24, 2012, Bruce Busby informed Mr. Martin about certain flow-testing that Danfoss Industries does on distributors before delivering them to

6

customers. (ROA.15-60477.272-273).  On August 30, 2012, Mr. Busby provided a quote for the distributors to Luvata and instructed it to issue a purchase order for the parts. (ROA.15-60477.275-276).  In accordance with Mr. Busby's quote and instruction, Purchase Orders were issued by Luvata to Danfoss Industries (ROA.15-60477.278);  (ROA.15-60477.104-114);  (ROA.15-60477.269).  Danfoss Industries accepted the Purchase Orders from Luvata that are the subject of this lawsuit, without objection to Danfoss, LLC's authority to enter into the contract. (ROA.15-60477.11); (ROA.15-60477.269); (ROA.15-60477.278).

The Luvata Grenada LLC purchase order contained "Instructions to Supplier" on the front. (ROA.15-60477.25).  The instructions included the following statement: "3.  ACCEPTANCE OF THE OFFER REPRESENTED BY THIS PURCHASE ORDER IS EXPRESSLY LIMITED TO THE TERMS HEREIN AND PRINTED ON THE REVERSE HEREOF. ACKNOWLEDGEMENT OF THIS ORDER OR DELIVERY IN WHOLE OR IN PART OF THE MATERIALS OR SERVICES TO BE FURNISHED HEREUNDER SHALL BE ACCEPTANCE OF THIS ORDER." (ROA.15-60477.25).  The Terms and Conditions on the reverse side of the Purchase Order provided that the order was to be construed under the laws of the state from which it was issued: "1.  The contract resulting from the acceptance of this order is to be

7

construed according to the laws of the state from which this order issues, as shown by the address of the buyer noted on the opposite side hereof." (ROA.15-60477.26).

No one from Danfoss Industries has ever informed Luvata that Danfoss, LLC in general, or Bruce Busby in particular, did not have authority to issue binding quotes or resolve customer service issues on behalf of Danfoss Industries. (ROA.15-60477.269-270); (ROA.15-60477.278). Quite the contrary, it has accepted and fulfilled Purchase Orders reflecting the price quotes provided by Danfoss, LLC and Mr. Busby. (ROA.15-60477.269-270); (ROA.15-60477.278). Danfoss, LLC continued to act as Danfoss Industries' agent even after Luvata's customer, Thermo King Corporation, voiced its concerns about the type and performance of the Danfoss distributor valve. Luvata's Director of Quality, Richard Copp, addressed the design and manufacturing issues with Danfoss, LLC representatives—not Danfoss Industries (ROA.15-60477.284-286).

Danfoss Industries' invoices were submitted to Luvata Grenada, LLC for payment—it is the "Bill to" entity identified on the invoices. (ROA.15-60477.122-197); (ROA.15-60477.280-283). Luvata Grenada LLC's accounts payable department initiated the wire transfer payments for those invoices and the

8

payments were made to Danfoss Industries' Citibank account in New York City. (ROA.15-60477.280-283).

### Thermo King

Thermo King is a customer of Luvata. (ROA.15-60477.12). In August 2012, Thermo King requested a particular type of coil from Luvata that utilized a particular type of distributor valve. (ROA.15-60477.12). Luvata provided Thermo King's description of the distributor valve to Bruce Busby of Danfoss, LLC and asked if Danfoss could supply that valve. (ROA.15-60477.12). As discussed above, Mr. Busby provided a quote for the valve and Luvata issued Purchase Orders pursuant to that quote. (ROA.15-60477.12). In October 2012, Luvata began to ship the coils, with Danfoss' distributor valve, to Thermo King. (ROA.15-60477.16). In late 2012/early 2013, Thermo King began to sell its units to its customers. (ROA.15-60477.16). In March 2013, Thermo King notified Luvata that it was experiencing field failures with the coils and during its testing it found that the distributors were the wrong type and size. (ROA.15-60477.16). Luvata incurred substantial costs fixing the field failures and resolving Thermo King's claim. (ROA.15-60477.17).

**Procedural Posture**

On May 28, 2014, Luvata commenced this action. (ROA.15-60477.2).   On September 9, 2014, the Danfoss entities moved to dismiss the complaint for lack of jurisdiction. (ROA.15-60477.2).   The District Court issued its decision on the motion to dismiss on June 2, 2015. (ROA.15-60477.3).   Luvata timely filed its Notice of Appeal on July 2, 2015. (ROA.15-60477.3).   Danfoss Industries timely filed its Notice of Cross-Appeal on July 9, 2015. (ROA.15-60477.3).

**The District Court's Order and Opinion**

Luvata asserted that the District Court, and this Court, have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claim is governed, at least in part, by a treaty entered into by the United States—the C.I.S.G.  Luvata also asserts that the District Court, and this Court, have the authority pursuant to 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the related state law claims. (ROA.15-60477.11-12).

The Danfoss entities argued that the treaty was inapplicable and, therefore, the District Court did not have subject matter jurisdiction or a basis to exercise its supplemental jurisdiction. (ROA.15-60477.538).   The District Court held that Danfoss' argument regarding the applicability of the C.I.S.G. was an attack on the

merits of Luvata's claims, not an attack on the Court's subject matter jurisdiction and, therefore, it denied the motion to dismiss on that basis. (ROA.15-60477.539).

Danfoss Industries also argued that the District Court did not have personal jurisdiction over it and, therefore, Luvata's claims as against it should be dismissed on that independent basis. The District Court held that Danfoss Industries did not have the requisite minimum contacts with Mississippi for the Court to exercise personal jurisdiction over it, so Danfoss Industries' motion to dismiss based on a lack of personal jurisdiction was granted. (ROA.15-60477.544). The Court retained jurisdiction over the claims against Danfoss, LLC. *Id.*

The parties subsequently stipulated that the remaining claims against Danfoss, LLC would be dismissed without prejudice. (ROA.15-60477.4).

## SUMMARY OF ARGUMENT

Luvata's argument is straightforward. The District Court has subject matter jurisdiction over this dispute because the transactions at issue were memorialized by Purchase Orders that were issued by Luvata from its offices in Grenada, Mississippi to Danfoss Industries in Mexico; the Luvata Purchase Orders provided that the transactions would be governed by the law of the state from which the orders were issued (i.e. Mississippi); Danfoss Industries accepted Luvata's Purchase Orders; Danfoss Industries issued its invoices to Luvata at its offices in

Grenada, Mississippi; and Luvata effectuated payment of those invoices from its offices in Grenada, Mississippi.  Simply put, this was a contract between a United States entity and a Mexican entity; the very type of transaction contemplated and governed by the C.I.S.G.

The District Court also has personal jurisdiction over Danfoss Industries under both Mississippi's long-arm statute and the United States Constitution. Danfoss Industries, through its authorized agent, Danfoss, LLC, is doing business in Mississippi, contracted with a Mississippi resident, and committed a tort outside the state that had its effects, in whole or in part, in Mississippi.  In addition, Danfoss, LLC regularly sells products, including Danfoss Industries' products, to Luvata in Mississippi and Danfoss Industries ships its products to Mississippi. Accordingly, Danfoss Industries should have anticipated being drawn into court in Mississippi.  The District Court has personal jurisdiction over Danfoss Industries and its decision dismissing Luvata's claims should be reversed.

## ARGUMENT

## POINT I.

## STANDARD OF REVIEW

**A.**     **This Court's Standard of Review**

Federal Rule 12(b)(1) and 12(b)(2) motions to dismiss are subject to a *de novo* review on appeal. *See United States v. Renda Marine, Inc.*, 667 F.3d 651,

12

655 (5th Cir. 2012); *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.

1997).

## B.    The 12(b)(1) Standard

This Court succinctly summarized the Federal Court's subject matter

jurisdiction over claims arising out of the C.I.S.G. in *BP Oil Int'l, Ltd. v. Empresa*

*Estatal Petroleos de Ecuador (PetroEcuador)*, 332 F.3d 333 (5th Cir. 2003):

> The general federal question jurisdiction statute grants subject matter jurisdiction over every civil action that arises, inter alia, under a treaty of the United States. 28 U.S.C. § 1331(a). The CISG, ratified by the Senate in 1986, creates a private right of action in federal court. The treaty applies to "contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." CISG art. 1(1)(a). BP, an American corporation, and PetroEcuador,  an Ecuadorian company, contracted for the sale of gasoline; the United States and Ecuador have ratified the CISG.
>
> As incorporated federal law, the CISG governs the dispute so long as the parties have not elected to exclude its application. CISG art. 6. PetroEcuador  argues that the choice of law provision demonstrates the parties' intent to apply Ecuadorian domestic law instead of the CISG. We disagree.
>
> A signatory's assent to the CISG necessarily incorporates the treaty as part of that nation's domestic law. BP's expert witness as to Ecuadorian law, Xavier Rosales-Kuri, observed that "the following source of Ecuadorian law would be applicable to the present case: (i) United Nations Convention on the International Sale of Goods . . . ." PetroEcuador's  expert did not disagree with this assessment. Given that the CISG is Ecuadorian law, a choice of law provision designating Ecuadorian law merely confirms that the treaty governs the transaction.

> Where parties seek to apply a signatory's domestic law in lieu of the CISG, they must affirmatively opt-out of the CISG.

*Id.* at 336-337 (citations omitted).

The United States and Mexico are signatories to the C.I.S.G. and no party affirmatively opted out of the C.I.S.G. Accordingly, provided the Contracting Parties are from different States, their contract is for the sale of goods, and they did they did not affirmatively opt out of C.I.S.G., then the treaty applies and the District Court has subject matter jurisdiction over the dispute.

## C.    The 12(b)(2) Standard

In order to defeat a motion to dismiss under Rule 12(b)(2), a plaintiff "need only make a prima facie case that jurisdiction is proper" where the District Court rules without an evidentiary hearing. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citing *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002)) (reversing the District Court and holding that plaintiffs had established a prima facie case of jurisdiction over defendants). In considering a motion to dismiss, the "uncontroverted allegations in the plaintiff's complaint must be taken as true. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005). And when the alleged jurisdictional facts are disputed, the court "'must resolve all conflicts in favor of the party seeking to invoke the

court's jurisdiction.'" *Paz*, 445 F.3d at 812-813 (quoting *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420 (5th Cir. 1993)).

Where "the district court conducts an evidentiary hearing, however, a plaintiff must demonstrate that the exercise of jurisdiction is appropriate by a preponderance of the evidence." *Irvin v. Southern Snow Mfg.*, 517 Fed. Appx. 229, 230 (5th Cir. 2013) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n.12 (5th Cir. 1983)); *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012) ("When the district court rules on the motion to dismiss before holding an evidentiary hearing, the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff.").

## POINT II.

### THE CONTRACT WAS BETWEEN LUVATA GRENADA AND DANFOSS INDUSTRIES

The District Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the C.I.S.G. because the contracting parties in this case are Luvata and Danfoss Industries.  As the C.I.S.G. states: "[a] proposal for concluding a contract addressed to one or more specific persons constitutes an offer if it is sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance.  A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and

the price." C.I.S.G. Part II, Article 14, § (1). "An offer becomes effective when it reaches the offeree." C.I.S.G. Part II, Article 15, § (1). "A statement made by or other conduct of the offeree indicating assent to an offer is an acceptance." C.I.S.G. Part II, Article 18, § (1).

The relationship between Luvata and Danfoss Industries for the distributor valve at issue was established and memorialized through a series of Purchase Orders. (ROA.15-60477.104-114); (ROA.15-60477.269); (ROA.15-60477.278). Every single Purchase Order was issued by Luvata Grenada LLC, P.O. Box 948, Grenada, Mississippi 38902-0948 to Danfoss Industries S.A. de C.V., Carr. Miguel Aleman # 162, 66600 Apodaca and included a specific quantity of the distributor valves being ordered and the agreed upon price for those valves. *Id.* Danfoss Industries accepted the Purchase Orders, manufactured and shipped the distributor valves at issue to Luvata's Mexican manufacturing facility, invoiced Luvata Grenada LLC for the distributor valves, and was paid in U.S. dollars for the valves in accordance with those Purchase Orders. (ROA.15-60477.104-114); (ROA.15-60477.122-197); (ROA.15-60477.280-283). The "Bill-To Party" on Danfoss Industries' own shipping records is Luvata Grenada LLC, 3984 HWY 51 South, Grenada, MS 38901 USA. (ROA.15-60477.122-197). The Danfoss Industries' invoices were sent to Luvata Grenada LLC's accounts payable department for

16

payment, and payment as initiated by that department to Danfoss' Citibank account in New York City. (ROA.15-60477.280-283).

Simply put, the contracting parties are Luvata—a Delaware limited liability company with its principal and only place of business in Grenada, Mississippi— and Danfoss Industries, a Mexican corporation with its principal and only place of business in Apodaca, Mexico. (ROA.15-60477.86-87); (ROA.15-60477.293-300). As the contracting parties have only one principal place of business and they are in different foreign jurisdictions which have signed the C.I.S.G.—the United States and Mexico respectively—the C.I.S.G. applies to this dispute.

## POINT III.

### THE COURT HAS PERSONAL
### JURISDICTION OVER DANFOSS INDUSTRIES

The C.I.S.G. does not contain a special federal rule for personal jurisdiction, so the Court should look to the law of the forum. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing FED. R. CIV. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014)); *JR Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citing FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000)). Accordingly, the Court should look

17

to Mississippi's long-arm statute to determine whether it has personal jurisdiction over Danfoss Industries.  The Mississippi long-arm statute provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, ***who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state***, ***or who shall commit a tort in whole or in part in this state against a resident*** or nonresident of this state***, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi*** and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 13-3-57 (emphasis supplied).

Luvata has asserted that the District Court has personal jurisdiction over Danfoss Industries because it: (1) entered into a contract with Luvata (a resident of Mississippi) to be performed in part in Mississippi; (2) Danfoss Industries committed a tort which had its effects in whole or in part in Mississippi; and (3) Danfoss Industries is doing business in Mississippi.

When evaluating personal jurisdiction in this case, however, the Court should also look at the conduct and contacts of Danfoss, LLC with Mississippi because it was Danfoss Industries' agent.  As discussed extensively by this Court in *JR Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000), the acts and

18

contacts of an agent can be considered when determining whether the court has jurisdiction over a non-resident defendant.

In *Stripling*, the plaintiff entered into a contract with Jordan regarding certain mining and exploration rights to property located in Mississippi. Stripling sued Jordan for breach of contract, but it also brought suit against a non-resident defendant—Guardian—arguing that it too breach the contract because Jordan was acting for the benefit of Guardian. Guardian moved to dismiss the complaint on the basis that the court did not have personal jurisdiction over it.

Stripling argued that Jordan was the agent of Guardian for purposes of the personal jurisdiction analysis. The Court agreed with Stripling, reversing the District Court's dismissal of the case. The Court began its analysis by reviewing Mississippi's agency law. "An agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) 'manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal,' (2) 'the agent's acceptance of the arrangement,' and (3) 'the parties understood that the principal will control the undertaking.'" *Stripling*, 234 F.3d at 869 (quoting *Forest Oil Corp. v. Tenneco, Inc.*, 626 F. Supp. 917, 921 (S.D. Miss. 1986) (citing *Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613, 617 (Miss. 1969)). Whether there is an

agency relationship is generally a question of fact "to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention. . . . If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not." *Id.*

In *Stripling*, this Court found that the acts of the agent—Jordan—were sufficient to exercise personal jurisdiction over the non-resident defendant under both Mississippi's long-arm statute and the United States Constitution. *Id.* at 872 ("We find that Guardian had sufficient contact, on the present record, to justify the district court's exercise of specific jurisdiction. Because we conclude that Stripling established a prima facie case of agency to justify the reach of the long-arm statute, we find that such agency permits a conclusion that Guardian entered into a contract with a Mississippi resident and could have reasonably anticipated being hailed into Mississippi court should a suit arise from the Flora Field contract."). *See also It's Intoxicating, Inc. v. Maritim Hotelgesellschft mgh*, 2015 U.S. Dist. LEXIS 8971, 34-35 (M.D.Pa. Jan. 27, 2015) (denying foreign defendant hotel chain's motion to dismiss for lack of personal jurisdiction because its authorized agent had sufficient contacts with Pennsylvania for the court to exercise jurisdiction over it).

20

The technical, corporate relationship between Danfoss, LLC and Danfoss Industries, i.e. whether they are sister companies or subsidiaries, is irrelevant. "The alleged agent need not be a subsidiary of the parent in order for the Court to anchor its jurisdiction on the agency relationship." *Nolan v. The Boeing Co.*, 736 F. Supp. 120, 126 (E.D.La. 1990) (citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 423 (9th Cir. 1977)). It is irrelevant whether the alleged agent is a wholly owned subsidiary of the principal or independently owned. *Id.*; *see also Cowart v. Shelby County Health Care Corp.*, 911 F. Supp. 248, 251 (S.D. Miss. 1996) (applying agency principals to find jurisdiction over a non-resident defendant). In this case, the facts establish that Danfoss, LLC was the authorized U.S. sales agent for Danfoss Industries.

As the Defendants admit, the Danfoss Group's entire business model is predicated on having domestic sales companies promote and sell the products produced by Danfoss' manufacturing companies. (ROA.15-60477.302-307). Danfoss, LLC is the United States domestic sales company for the Danfoss Group. (ROA.15-60477.302-307). Bruce Busby of Danfoss, LLC was Luvata's sales contact for the distributor valves manufactured by Danfoss Industries. (ROA.15-60477.268-270). Mr. Busby provided the price quote to Luvata, he provided information regarding Danfoss's manufacturing processes, he instructed Luvata on

how to submit the Purchase Orders to Danfoss Industries, and he was the point of contact for Luvata once its customer made complaints about the product. (ROA.15-60477.268-270); (ROA.15-60477.285). Even Danfoss's technical response to Luvata was generated by Danfoss, LLC's Quality Manager, Lee Sartore. (ROA.15-60477.285); (ROA.15-60477.288-289). Everyone at Luvata certainly thought, and still thinks, that Danfoss, LLC has that authority to act on behalf of Danfoss Industries. While Defendants couch Danfoss, LLC's work as providing "support and assistance to Danfoss Mexico", the truth is Danfoss, LLC is the face of the Danfoss Group in the United States and, in particular, with regard to Luvata.

Accordingly, for purposes of the Court's jurisdiction analysis regarding Danfoss Industries, the contacts and conduct of Danfoss, LLC should be considered. Danfoss, LLC is authorized to do business in Mississippi and does business in Mississippi specifically with Luvata Grenada LLC.

**A.     Danfoss Industries is Doing Business in Mississippi Directly and through Its Authorized Agent Danfoss, LLC**

The "doing business" prong of the Mississippi long-arm statute "by its plain terms, applies to any person or corporation performing any character of work in this state." *Estate of Jones v. Phillips*, 992 So. 2d 1131, 1139 (Miss. 2008); *see also Walker v. World Ins. Co.*, 289 F. Supp. 2d 786, 788 (S.D. Miss. 2003) (holding that a non-resident is subject to jurisdiction under the doing business

22

prong if it is conducting any type of business in Mississippi). "The requirements for exercise of jurisdiction pursuant to the doing business prong are: (1) the non-resident must purposefully do some act or consummate a transaction in Mississippi; and (2) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." *Charles v. Al-Anssi*, 2007 U.S. Dist. LEXIS 19434, 12-14 (S.D. Miss. Mar. 19, 2007) (citing *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773 (S.D. Miss. 2001) (citing *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995)).

Defendants admit that "Luvata Grenada, LLC [] is a customer of Danfoss US [Danfoss, LLC] and purchases products from Danfoss US in the United States, including products manufactured by Danfoss Industries S.A. de C.V." (ROA.15-60477.88). Through its agent, Danfoss Industries is purposely soliciting business from Mississippi residents, obtaining sales in Mississippi, delivering its products to Mississippi, and receiving payment for those Mississippi sales from Mississippi residents. In short, Danfoss Industries is doing business in Mississippi through its agent.

Exercising personal jurisdiction over Danfoss Industries does not offend traditional notions of fair play and substantial justice. Danfoss advertises that the United States is one of its four largest markets. (ROA.15-60477.315-340).

23

Defendants admit that Danfoss, LLC sells Danfoss Industries' products in the United States, and specifically in Mississippi. (ROA.15-60477.88-89). Danfoss Industries should not be surprised that it being sued in Mississippi, it knows its products are being sold in the state by its United States sales agent. The Court has jurisdiction over Danfoss Industries.

**B.    Danfoss Industries Entered Into a Contract with Luvata that was to be Performed in Part in Mississippi**

In the alternative, the Court has personal jurisdiction over Danfoss Industries because it entered into a contract that was to be performed in part in Mississippi. There is no dispute that Luvata Grenada LLC is a resident of Mississippi. It is licensed to do business in Mississippi, its principal place of business is in Mississippi, and its operations are conducted out of Mississippi. (ROA.15-60477.277). As discussed above, the contracts at issue are the Luvata Purchase Orders that were sent to Danfoss Industries. Those Purchase Orders had to be performed, at least in part, in Mississippi as the invoices for those Purchase Orders were submitted to, and paid for by, Luvata. (ROA.15-60477.280-283). Accordingly, the contract had to be performed, at least in part, in Mississippi. *See Al-Anssi*, 2007 U.S. Dist. LEXIS at * 11-12 ("A non-resident is subject to personal jurisdiction in Mississippi pursuant to the contract prong if it enters into a contract with a Mississippi resident that is to be at least partially performed in Mississippi.

24

MISS. CODE ANN. § 13-3-57. The contract between Nasser Equipment and Charles required Nasser Equipment to deliver the excavator to Charles' Mississippi address. The contract also required Charles to make monthly payments for the equipment from Mississippi. Therefore, the Court finds that the contract was to be partially performed in Mississippi.").

## C.    Danfoss Industries Committed a Tort Which Had its Effect in Part in Mississippi

Finally, Luvata has alleged tort claims against Danfoss Industries where the tort had its effect on Luvata in Mississippi. "For purposes of the tort prong . . . , 'a tortious act outside the state which causes injury within the state confers jurisdiction on the courts of that state.'" *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 879 (Miss. 1995). "Under Mississippi law, a tort is not complete until an injury is suffered." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270-271 (5th Cir. 2006) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir. 1985) (quoting *Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971)). "If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied." *Id.* The tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient. *Id.* (quoting *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982)).

25

Luvata has alleged, and Danfoss Industries has not controverted, that Danfoss Industries by and through its agent, engaged in torts outside Mississippi—negligent misrepresentation and negligent design—which resulted in injuries being suffered by Luvata in Mississippi. (ROA.15-60477.17); (ROA.15-60477.20-22); (ROA.15-60477.286).    Accordingly, Danfoss Industries is subject to personal jurisdiction in Mississippi on this separate and independent basis.

**D.    Exercising Personal Jurisdiction Over Danfoss Industries Comports with the Due Process Clause**

The exercise of jurisdiction over Danfoss Industries is proper under Mississippi's long-arm statute and it comports with basic due process requirements of the United States Constitution. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974).    There are two types of personal jurisdiction under the Constitution, general and specific. *Irvin v. Southern Snow Mfg.*, 517 Fed. Appx. 229, 231-232 (5th Cir. 2013) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006)).    Where jurisdiction is predicated on specific jurisdiction, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (citations omitted).

26

The touchstone of specific jurisdiction is whether or not the defendant purposely established minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.*(citations omitted). "Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* (citations omitted). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court] ha[s] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (citations omitted).

Provided the Defendant has "minimum contacts" with the forum state, those "contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476-77 (citing *International Shoe Co. v. Washington*, 326 U.S. at

320).   "Thus courts in 'appropriate [cases]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292).   "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984); *Calder v. Jones*, 465 U.S. 783, 788-789 (1984); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223-224 (1957)).   "On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." *Id.*

In the case at hand, Danfoss Industries has the necessary minimum contacts with Mississippi through its own, and its agent's, actions.   Danfoss Industries contracted with Luvata to provide the distributor valves at issue. (ROA.15-

60477.104-114). Its agent is registered to do business in Mississippi and does business in Mississippi with Luvata Grenada LLC for the benefit of Danfoss Industries. (ROA.15-60477.88). Danfoss Industries knows, or should know, that its agent is selling its products in Mississippi to Luvata. Danfoss Industries is paid for its products by Mississippi residents, including Luvata. Danfoss Industries has purposely availed itself of the benefits of doing business in Mississippi.

The action arises out of Danfoss Industries' contacts with Mississippi. Bruce Busby was the Danfoss sales engineer assigned to Luvata. (ROA.15-60477.277). Mr. Busby visited Luvata's facilities in Grenada, Mississippi in late summer/early fall 2012 and advised Luvata that he was responsible for its account. (ROA.15-60477.277). Mr. Busby was the only person at Danfoss who provided a quote, described its manufacturing processes, and instructed Luvata on how to submit its Purchase Orders for the distributor valves in question. (ROA.15-60477.269-270). When Luvata needed product support for the distributor valves at issue, it was Lee Sartore of Danfoss, LLC who responded, not Danfoss Industries. (ROA.15-60477.285-289).

Finally, the exercise of jurisdiction over Danfoss Industries is fair and reasonable. The primary witnesses will be from Danfoss Industries' U.S. sales agent, Danfoss, LLC, regarding the quote, design, and post-Thermo King

29

complaint investigation and Luvata's representatives. Those witnesses are all in the United States. Furthermore, based on the fact that Mr. Busby was the point of contact with Luvata for the quote, design parameters, and post-Thermo King complaint investigation, it is believed that most of the relevant documentation is in the United States. Under the circumstances, it would be fundamentally unfair to Luvata to be forced to pursue this litigation in Mexico. Danfoss Industries receives the benefits of conducting business in Mississippi, it should also be obligated to suffer the burdens of such a decision as well.

## **CONCLUSION**

The District Court erred when it granted Danfoss Industries' motion to dismiss for lack of personal jurisdiction. Danfoss Industries, in conjunction with its authorized sales representative in the United States, Danfoss, LLC, was doing business in Mississippi, entered into a contract that required partial performance in Mississippi, and committed a tort that had its effects in Mississippi. Accordingly, the Court has personal jurisdiction over Danfoss Industries and the District Court's decision should be reversed.

Dated:      September 15, 2015

Respectfully submitted,

**HODGSON RUSS LLP**

By:   /s/Ryan K. Cummings
Ryan K. Cummings, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202-4040
Telephone: (716) 856-4000

And

**WISE, CARTER, CHILD & CARAWAY, P.A.**
James L. Robertson, of counsel
401 E. Capitol Street
Heritage Building
Suite 600
Jackson, Mississippi 39201
Telephone: (601)968-5500

*Attorneys for Plaintiff-Appellant-Cross-Appellee*
*Luvata Grenada LLC*

31

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2015, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Appellee.  In addition, a copy of the Brief was served on counsel for the Appellee by First-Class Mail, addressed as follows:

James Cal Mayo, Jr., Esq.
Mayo Mallette PLLC
5 University Office Park
2094 Old Taylor Road, Suite 200
Post Office Box 1456
Oxford, Mississippi 38655

<u>/s/Ryan K. Cummings</u>
Attorney for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,212 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman font size 14.

/S/ Ryan K. Cummings
Attorney for Appellant